UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW STACKLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-02247-SNLJ |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

The Commissioner of the Social Security Administration denied plaintiff Matthew

Stackle's applications for disability insurance benefits under Title II of the Social

Security Act, 42 U.S.C. §§ 401, *et seq*. Stackle now seeks judicial review. The

Commissioner opposes the motion. The issues being fully briefed, and for the reasons set

forth, this Court will **AFFIRM** the Commissioner's decision.

## I.    Procedural History

Stackle's application was denied at the initial determination level.  He then

appeared before an Administrative Law Judge ("ALJ").  The ALJ found Stackle is not

disabled because his symptoms were not supported by the medical evidence available.

Stackle then filed a request for review of the ALJ's decision with the Appeals Council of

the Social Security Administration, which was denied.  Thus, the decision of the ALJ

stands as the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981.  Stackle now

seeks review by this Court pursuant to 42 U.S.C. § 405(g).

1

## II.     Disability Determination—The Five-Step Framework

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability.  20 C.F.R. § 404.1520(a)(1).  First, the Commissioner considers the claimant's work activity.  If the claimant is engaged in substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a)(4)(ii).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i). An RFC is "defined as what the claimant can still do despite his or her physical or mental limitations." *Gann v. Berryhill*, 864 F.3d 947, 951 (8th Cir. 2017); *see also* 20 C.F.R. § 404.1545(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R.

3

§ 404.1545(a)(3).  If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled.  20 C.F.R.  § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  20 C.F.R.  § 404.1520(a)(4)(v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.*  At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

## III.    The ALJ's Decision

At Step One, the ALJ found Stackle met the insured status requirements through December 31, 2022, and had not engaged in substantial gainful activity since November 8, 2015. (Tr. 77). At Step Two, the ALJ found Stackle suffers from seven medically determinable impairments: (1) status-post compression fracture of the T7 (thoracic) vertebra; (2) residual effects of traumatic brain injury; (3) obstructive sleep apnea; (4) obesity; (5) bipolar disorder; (6) depression; and (7) anxiety. (Tr. 77). At Step Three, the ALJ concluded Stackle does not have an impairment or combination of impairments that

meets or equals one of the presumptively disabling impairments listed in the regulations.

(Tr. 78-79).

Next, in beginning the analysis of Step Four, the ALJ determined Stackle's RFC.[1]

The ALJ found that

> [t]he claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a), except that he should never be required to climb a ladder, rope, or scaffold. He can only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. He must avoid hazards such as working at unprotected heights and in proximity to unprotected dangerous machinery. He must avoid jobs requiring him to ambulate on unimproved terrain or exposing him to whole body vibration. In addition, he is limited to simple, unskilled tasks in a working environment not involving close interactions with the public.

(Tr. 80).  As part of this determination, the ALJ found Stackle's allegations about his

physical and mental symptoms' intensity, persistence, and limiting effects were not

consistent with the medical records when considered as a whole. (Tr. 80). The ALJ

recognized both physical and mental symptomology resulting from Stackle's fall from a

17-foot deer hunting stand in 2015, but ultimately concluded the symptomology was only

mild-to-moderate in severity. (Tr. 80). It was noted that Stackle "has never been

psychiatrically hospitalized and his mental status examinations are routinely within

normal limits aside from some mild anxiety." (Tr. 79). Moreover, while Stackle "clearly

injured his thoracic spine," which is exacerbated by his "morbid obesity," there "is

nothing persuasive in the record to suggest that this accident rendered him disabled from

---

[1] Determining claimant's RFC is "essential to properly completing steps four and five." *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). However, the RFC is determined at step four—a point in which the burden of proof rests with claimant. *See Scott v. Berryhill*, 855 F.3d 853, 855 (8th Cir. 2017); *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).

a musculoskeletal standpoint." (Tr. 81). The ALJ further highlighted a variety of daily activities Stackle can perform and noted the relatively conservative treatment and opinions from various providers; with that information, it was determined Stackle's could still perform sedentary work. (Tr. 81-84).

Having made an RFC determination, the ALJ continued on through Step Four to determine whether Stackle could perform his past relevant work in light of his designated RFC. The ALJ determined Stackle is unable to perform any past relevant work. (Tr. 84).

At Step Five, the ALJ analyzed whether Stackle can successfully adjust to other work. The ALJ noted that if Stackle could perform all or substantially all of the exertional demands at a given level under the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2, then the Grids would direct a conclusion of whether Stackle was "disabled" or "not disabled." The ALJ acknowledged, however, that additional limitations impede Stackle's ability to perform work at all or substantially all of the assigned level. Thus, the ALJ relied on vocational expert (VE) testimony to determine the extent to which these limitations erode Stackle's occupational base to perform "sedentary work." The VE testified Stackle could perform work as an assembler, document preparer, and toy stuffer even after considering all of the limitations in Stackle's RFC. (Tr. 85). The ALJ then found these jobs exist in significant numbers in the national economy and concluded Stackle is not disabled. (Tr. 85).

## IV.   Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). Substantial evidence

is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## V. Discussion

Stackle seeks remand on two issues. First, he says the ALJ erred in discounting the opinions of two of his treating physicians—Dr. Radhika Rao and Dr. Bassam Malo— both of whom opined Stackle is more functionally limited than outlined in the RFC. Second, he says the ALJ erred in discounting his subjective complaints of pain that "causes a loss of focus and makes him not want to be bothered [by others]."

### A. The ALJ Did Not Err in Discounting the Opinions of Stackle's Treating Physicians

Stackle's treating physicians, Rao and Malo, noted a number of physical and mental limitations in medical source statements (MSS) that they completed. Among other things, Rao indicated Stackle has "marked" limitations in his ability to timely complete tasks and

avoid distractions and "extreme" limitations in his ability to sustain an ordinary routine and regularly attend work. (Tr. 688). Rao's MSS suggests Stackle's overall "pace of production" would be reduced by as much as 31% or more—the highest category allowed on the checklist-format questionnaire. In fact, for the vast majority of the MSS Rao chose the most or second-most severe category available. (688-691). Rao based these opinions on Stackle's diagnosis of "bipolar disorder." (Tr. 691). It is telling, though, that Rao chose "1995" as the alleged onset date of disability—nearly twenty years *before* Stackle himself alleges he became disabled following a fall in 2015. (Tr. 143, 691). The MSS, like many this Court confronts, suffers from a heavy hand that fails to give appropriate support to its conclusions through reference and citation to longitudinal data—treatment notes, objective diagnostic results, and the like. Instead, it is satisfied to make sweeping declarations seemingly out of whole cloth; indeed, if read exactly for what it purports to say, one would be under the impression from Rao's MSS that Stackle has been disabled for nearly 25 years solely because of his bipolar disorder. (Tr. 691). Of course, the *evidence* is that he has been successfully employed by the same company from 1988 to 2015 notwithstanding his bipolar condition. And he, himself, admits that he has never been hospitalized for any psychiatric conditions, bipolar disorder included. (Tr. 766).

Malo's MSS is more robust—detailing symptomology, trends over time of treatment, and past procedures and their effect. (Tr. 803). But, again, it devolves into checklist opinions about Stackle's functional limitations that offer no clues as to underpinning evidentiary support in the record. (Tr. 804-805). Largely, Malo believes Stackle is capable of physical exertion notwithstanding his back pain—he can lift up to 20

8

pounds, has no problem manipulating his head to turn various angles, and needs no assistive device to stand and walk. (Tr. 805). Stackle is also capable of sitting up to four hours a day and can stand two-or-less hours. (Tr. 804). But curiously, the MSS goes on to say that Stackle would need a thirty-minute break every one-to-two hours and is likely to be absent three-or-four days per month. (Tr 805). There is nothing in Malo's treatment records supporting, tangentially or directly, either of these limitations. Instead, Malo indicated Stackle has "normal strength in all limbs," "normal [but sometimes] slow gait," and—over a period of many months—"no acute distress." (Tr. 782-788). If Stackle needs frequent thirty-minute breaks from a physical standpoint, it is not clear why. And a holistic review of the record suggests Stackle reliably makes his appointments—spaced out over weeks and months. Thus, it is not clear why absenteeism would manifest. The only possibility, it seems, is that Stackle would need time to attend his doctor appoints; but then, many Americans miss some work to attend to their medical concerns—that is not a disabling feature.

The ALJ does not err in disregarding conclusory opinions from a MSS or any questionnaire-type document. *See Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012); *Johnson v. Astrue*, 628 F.3d 991, 994 (8th Cir. 2011); *Choate v. Barnhart*, 457 F.3d 865, 870 (8th Cir. 2006). Both Rao and Malo opine on a variety of functional limitation that are simply not grounded in the total record. It is, of course, the ALJ's duty to "consider ***all the evidence*** in the record," and "medically-documented impairments"—especially those found in an MSS or similar questionnaire—do not "perforce result in a finding of disability." *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004) (emphasis added).

9

Here, the ALJ went beyond the MSS questionnaires and appropriately considered the objective diagnostic evidence, the opinions of other doctors, and the daily activities of Stackle. From a musculoskeletal standpoint, Stackle's back conditions are repeatedly referred to as "mild" or "moderate" following interpretation of CT scans. (Tr. 341-342, 349-350). Stackle was, in fact, discharged from the hospital just two days after suffering the fall triggering his disability claims. (Tr. 353-356). A few weeks after being discharged, one neurosurgery provider mentions how "immediately after the fall [Stackle] had no issues with his arms or legs and had no pain or tingling into any extremities," though persistent mid-back pain followed. (Tr. 571). Nonetheless, "given such a mild percentage of vertebral collapse" the doctor was "not inclined to offer any interventions at [that] point." (Tr. 572). Instead, "conservative options" were deemed "the best course for [Stackle] going forward." (Tr. 572). Almost a year after the fall accident, notes indicate that Stackle's "bones appears to have healed at this point," which required no further "surgical intervention from [the doctor's] standpoint." (Tr. 553). Stackle was experiencing "significant back and chest pain," but it appears to have improved through 2017 because, by that point, Stackle himself began contemplating going back to work—even if not in the same labor-intensive job he held prior to his accident. (Tr. 533, 742).

From a mental health standpoint, neuropsychological consultation records from early 2016 suggest Stackle, himself, believed he was back to "approximately 75% of his cognitive baseline." (Tr. 451). Attention was at "almost 100%," memory was mildly impaired by short-term memory loss, speech was either normal or occasionally mildly limited by "word finding difficulty," and judgment as "fine." (Tr. 453-454). Stackle's

10

bipolar disorder was "fairly well controlled," though anxiety symptoms were still being worked on. (Tr. 454). His depression was "within normal limits" and his anxiety demonstrated a "moderate range of severity." (Tr. 455). He performed in the "high-average" range for semantic fluency and psychomotor and visual processing speeds, while being "average" in his visual perception. (Tr. 455). Overall, the doctor concluded that "[f]rom a cognitive perspective, the patient appears to be doing well" and, thus, did not "need [] re-evaluation at this time." (Tr. 455).

Stackle's daily activities shed further light on his functional capabilities. In 2017, Stackle completed a functional report in which he admitted he could still do some combination of hunting, fishing, and watching television. (Tr. 272). He could also do "light" grocery shopping, go outside "as needed," drive a car, take the trash out, do light household chores, and make his own meals. (Tr. 270-271).

Ultimately, the question is not whether Stackle suffers pain and associated functional limitations—it is clear that he does. The question, instead, is "how severe that pain is." *Riggins v. Apfel*, 177 F.3d 689, 692 (8th Cir. 1999). It is the ALJ's job to formulate an RFC that incorporates the severity of a claimant's physical and mental health conditions according to the ***total*** body of evidence. *See Hensley v. Colvin*, 829 F.3d 926, 932-933 (8th Cir. 2016); *see also Lacroix v. Barnhart*, 465 F.3d 881, 888-889 (8th Cir. 2006). Accordingly, the ALJ did not err in taking a holistic evidentiary approach and, thereby, discounting or outright disregarding Rao and Malo's MSS opinions to the extend they were either unsubstantiated or outright contrary to the record. In this Court's view, the RFC fairly addresses Stackle's limitations as supported by the total record.

**B.  The ALJ Did Not Err in Discounting Stackle's Subjective Complaints**

For the same reasons the ALJ did not err in disregarding the conclusory opinions of Stackle's treating physicians, the ALJ did not err in disregarding Stackle's subjective complaints. Again, the ALJ is ultimately tasked with evaluating the total record; thus, the ALJ is required to evaluate the "objective medical evidence" and "other evidence" that might detract from Stackle's subjective complaints. *Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019). The ALJ must consider things like a claimant's daily activities, the duration, frequency, and intensity of pain, and the effectiveness of treatment. *Id*. Thus, in *Swink* the Eighth Circuit found the ALJ did not err in discounting the alleged intensity and persistence of the claimant's subjective pain allegations where objective diagnostic data shows only "mild" spinal irregularities and claimant's daily activities made it clear he was capable of a light, unskilled work RFC.  *Id*. at 770-771.

Here, Stackle takes issue with the ALJ allegedly ignoring his complaints that his anxiety is somehow disabling and that, perhaps as a result, "his concentration is terrible" and not conducive to workplace success. Stackle also haphazardly points to a variety of evidence the ALJ purportedly did not consider regarding his back pain—curiously, some of which actually refutes Stackle's claims, such as the opinions of Dr. James Schell who found Stackle could perform "light" work and not just "sedentary" work as described by the RFC. (Tr. 143). Foremost, the "ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). And, in any event, it is not ignoring Stackle's complaints nor "playing doctor" for the ALJ to rely on other medical evidence that diminishes the credibility of Stackle's own, self-interested

12

opinions. To legitimize those opinions, they must be supported through a holistic reading of the record—else *anyone* can proclaim *anything* in their bid for disability. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (noting an ALJ may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony").

As already discussed above, other medical evidence detracts from Stackle's subjective complaints. That evidence suggests Stackle was "doing well" from "a cognitive perspective." (Tr. 455). His anxiety was "moderate[ly]" severe, but not to any disabling degree. (Tr. 455). And, specific to his focus, treatment notes suggest his ability to maintain attention was "almost 100%." (Tr. 453-454). Stackle himself said he was at nearly "75% of his cognitive baseline" from before his accident. (Tr. 451). Of course, his daily activities also show he is capable of doing tasks that require some basic level of concentration—driving, fishing, hunting, grocery shopping, making meals, doing light chores, and the like. (Tr. 270-272).

In this Court's view, the ALJ simply did not err in discounting Stackle's subjective complaints to the extent they failed to comport with the total record. *See Schwandt*, 926 F.3d at 1012.

## VI.   Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *Gann v. Berryhill*, 864 F.3d 947, 950 (8th

Cir. 2017). Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED**  that the Commissioner's decision is **AFFIRMED** and plaintiff Matthew Stackle's complaint (ECF #1) is **DISMISSED  with prejudice**. A separate judgment accompanies this Order.

So ordered this 2nd day of June 2020.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE